UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Amanda Perry et al.,

    Plaintiffs,

v.                                        Case No. 18-10311

Cavalry SPV I, LLC et al.,            Sean F. Cox
                                              United States District Court Judge

    Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE PLEADINGS**

Five plaintiffs have sued Defendant Cavalry SPV I, LLC and its servicing arm, alleging that state-court debt-collection suits filed by Cavalry against them were false and deceptive, in violation of the Fair Debt Collection Practices Act and the Regulation of Michigan Collection Practices Act. Defendants have moved for judgment on the pleadings.

For the reasons below, the Court shall grant Defendants' motion. As to Plaintiff Amanda Perry, her claims are barred by the one-year statute of limitations. And as for the remaining Plaintiffs, although their complaint contends that the debt-collection suits were the product of falsehoods and misrepresentations, they have not offered any well-pleaded *factual* allegations, instead of conclusory allegations and legal conclusions, that would allow the Court to reasonably infer that Defendants violated the FDCPA.

**BACKGROUND**

This is the second of two nearly identical lawsuits filed by Plaintiffs' attorneys against Cavalry SPV I, LLC and its servicing arm, Cavalry Portfolio Services, LLC. *See Gordon et al.*

1

*v. Cavalry SPV LLC et al.*, Docket No. 18-10148. The suit here is on behalf of five Plaintiffs–Amanda Perry, Kathleen Waluzak, Cynthia Dillard, Sean P. Dolehanty, and Sarah R. Pearsall. Amended Complaint, ¶ 12. Like the first lawsuit, Plaintiffs generally allege that Defendants are engaged in the filing of false collection lawsuits for false amounts against Michigan debtors. *Id*. at ¶ 2.

More specifically, Plaintiffs allege that Cavalry purchases the collection rights to debts in bulk portfolios. *Id*. at ¶ 36. When it does so, it receives a computerized summary of the debts included in the portfolios, although the purchase agreements for those portfolios disavow responsibility for the accuracy of the included data. *Id*. at ¶¶ 36, 39. Plaintiffs allege that this information that Cavalry receives is insufficient to establish the validity of the debts Plaintiffs purportedly owe, the calculation of the claimed balance, or that they, as the consumers, even owe the debt. *Id*. at ¶ 41. Nor does the information establish an intent to pursue the litigation through to trial with the proper evidentiary paperwork. *Id*.

After purchasing the debts, Cavalry provides Michigan attorneys with the sales documents it has obtained so that the attorneys can sue to collect on the debts. *Id* at ¶ 36. But the full and complete purchase/sale agreements from the debt-portfolio purchases are never attached to the resulting lawsuits. *Id*. at ¶ 39. Nor do the suits include proof of the exact amount owed or that Cavalry is the owner of the sued-upon debt. *Id*. at ¶ 42. In fact, the suits are merely "computer template" collection suits that lack meaningful attorney review by the attorneys that sign them. *Id*. In some instances, Cavalry also uses false affidavits of claims and seeks default judgments without having admissible prima facie evidence to substantiate its claims at trial. *Id*. at ¶ 43. Indeed, Plaintiffs allege that Cavalry's only intent in filing these suits is to obtain a

default via false allegations. *Id*. at ¶ 41.

Cavalry filed debt-collection suits against each of the five plaintiffs. Amended Complaint, Ex. 1. The complaints against Dolehanty, Waluzak, and Dillard were nearly identical, differing only in the dates, listed account numbers, and the amounts owed. *Id*. They stated in relevant part:

> 7. That on or about [date], the account at issue was transferred, sold and/or assigned from Citibank, N.A. to Plaintiff. (See attached bill of sale.)
>
> 8. That on or about [date], Defendant entered into a contract with Plaintiff's assignor, Citibank, N.A., for goods sold and delivered and/or services rendered on open account, Account Number(s): [account number]
>
> 9. That a copy of the contract is attached or, alternatively, the contract is in the possession of Defendant pursuant to MCR 2.113(F)(1)(b) (see attached Exhibits).
>
> 10. That the contract was entered into for valid consideration and lawful and proper purposes and is legally enforceable in all respects.
>
> 11. That Plaintiff has performed all of its obligations and fulfilled all of its conditions precedent under the terms of the contract.
>
> 12. That Defendant has received periodic billing statements from Plaintiff's assignor to which Defendant has made payment(s) toward and/or not objected to.
>
> 13. That Defendant has, without excuse, defaulted upon and materially breached the contract.
>
> 14. That as a result of Defendant's breach, Plaintiff has suffered damages in the sum of [amount] (see attached Exhibits).

*Id*. The complaints all requested judgment in the amount of the debt owed. *Id*.

Each of these three complaints were accompanied by a bill of sale and assignment, identical across the complaints except for the listed dates, that stated:

> THIS BILL OF SALE AND ASSIGNMENT dated [date], is by Citibank, N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD 57117 (the "Bank")

> to Cavalry SPV I, LLC, organized under the laws of the State of Delaware, with its headquarters/principal place of business at 500 Summit Lake Drive, Suite 400, Valhalla, NY 10595 ("Buyer").
>
> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated [date], between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 and the final electronic file.

*Id.* These bills were signed by a Citibank official. *Id.* And, at least for Dolehanty, the bill was accompanied by an exhibit describing the accounts assigned (bulk-debt portfolios) and documentation from Citibank listing the account information and debt-amount due for the specific account at issue. *Id.*

As to Perry, Cavalry filed a similar complaint, which stated in relevant part:

Count I - Breach of Contract

> 3. Defendant(s) entered into a credit card agreement ("contract") with Plaintiff or Plaintiff's assignor for a credit card bearing account number [number].
>
> 4. Plaintiff's assignor, issued the subject credit card and extended credit to Defendant(s) in accordance with the card member agreement sent to Defendant(s).
>
> 5. Defendant(s) accepted the terms and conditions of the card member agreement by using the account to purchase goods and services and/or to take cash advances and/or to make balance transfers, and under the terms and conditions of the card member agreement, was thereby contractually obligated to make timely monthly payments.
>
> 6. Plaintiff or Plaintiff's assignor fully complied with the terms and conditions of the card member agreement.
>
> 7. Defendant(s) defaulted under the terms and conditions of the card member agreement by failing to pay the monthly payments when due.
>
> 8. Per the default provision(s) of the card member agreement, the entire account balance is now due, and although Plaintiff has requested payment of the

balance, Defendant has failed to pay it.

### Count II - Account Stated

> 9. For this count Plaintiff incorporates by reference all assertions of fact contained in paragraphs one though eight and further states:
>
> 10. Defendant(s) received and accepted monthly billing statements from both Plaintiff and Plaintiff's assignor and did not object to their accuracy, nor has Defendant(s) raised a legally recognized objection in this matter.
>
> 11. The account has become stated between the parties and, consequently, Defendant(s) is now justly indebted to Plaintiff for the account balance.

*Id*. This complaint requested judgment in the amount of the debt owed, plus interest, costs, and a statutory attorney fee. *Id*.

The complaint against Perry was accompanied by an affidavit of claim, sworn to by an agent of Cavalry. *Id*. The affidavit stated that Perry had opened an account with Bank of America in December 2007, the account had become delinquent, there was an outstanding balance of $4,076.39, and that Cavalry had purchased the account. *Id*. But Plaintiffs allege that this could not have been true; Perry was only 16-years-old in December 2007 and thus could not have signed for the debt. Amended Complaint, ¶ 11.

Finally, the complaint against Pearsall, which stated in relevant part:

> 7. That Plaintiff, through its assignor, and Defendant have consented to a sum as the credit balance due from one another on the account.
>
> 8. That Defendant has received periodic billing statements from Plaintiff's assignor to which Defendant has made payment(s) towards and/or not objected to.
>
> 9. That Defendant's payments and/or failure to successfully question the state of the account within a reasonable amount of time constitutes an admission of correctness.
>
> 10. That Defendant has been given all set-offs, credits and/or allowances on the account and is indebted to Plaintiff in the amount of $8,117.49 (see

5

attached Exhibits).

       11. That a statement of the account and an affidavit verifying the account are attached to this Complaint and incorporated by reference (see attached Exhibits).

       WHEREFORE, Plaintiff prays that Judgment be entered in its favor and against Defendant in the amount of $8,117.49.

Plaintiffs allege that the debt-collection lawsuits are all the same, have the same or similar paperwork attached, and all lack any proof that Cavalry owns the specific debt being sued upon. *Id.* at ¶ 47. They are computer generated, created by non-attorney employees, and lack any meaningful or substantive review by the attorney who signs off on the complaints. *Id* at ¶ 51. The suits lack proper supporting attached credit card agreements listing the actual specific debts and lack any properly authenticated copies of the relevant bill of sale, credit cardholder agreement, or other document evidencing and authorizing the amount sought. *Id.* at ¶¶ 48, 50. Instead, Cavalry creates false general sale and debt assignments and creates the false impression that they have the right to collect and sue on the debts. *Id.* at ¶ 48. Absent the false allegations and missing paperwork, however, there is no proof that Cavalry has the right to sue Plaintiffs for the credit card debts. *Id.* at ¶ 54. This includes the absence of any evidence showing the specific assignment of the specific debts from the original creditor to Cavalry. *Id.* at ¶ 57. Indeed, there was no valid assignment for the debts sued upon here. *Id.* at ¶ 55.

In light of the above, Plaintiffs have filed suit against Defendants, alleging a litany of violations of the FDCPA, including:

- (a) Using false, deceptive, and misleading representations and means in connection with the collection lawsuits, violating 15 U.S.C. §§ 1692e, 1692e(10)
- (b) Designing and furnishing the lawsuits against Plaintiffs while knowing that

the format used would create the false belief in Plaintiffs and the courts that the suits were supported by legally recognized and non-hearsay documentation, which was not the case, violating § 1692f(1)

- (c) Seeking to collect on a debt with no proof, chain of title or transfer, authorization or card holder agreement, violating § 1692f

- (d) Designing and furnishing false and hearsay proof and false evidence of a debt ownership to falsely accuse, threaten, and sue Plaintiffs without the necessary proof, violating § 1692e(5)

- (e) Falsely representing that a collection lawsuit and judgment is supported by the assignment of Citibank debt to Cavalry, violating § 1692e(2)(A)

Plaintiffs also allege that Defendants' conduct violated a multitude of provisions under Michigan's Regulation of Collection Practices Act.

Defendants have moved for judgment on the pleadings (Doc. # 18) and Plaintiffs have responded (Doc. #21). The Court shall decide this motion on the briefs, the issues having adequately been presented therein. LR 7.1(f)(2).

**STANDARD OF DECISION**

A motion for judgment on the pleadings under Rule 12(c) is adjudicated under the same standard as a Rule 12(b)(6) motion. *Lindsay v. Yates*, 498 F.3d 434, 437 n. 5 (6th Cir. 2007). That rule provides for the dismissal of a case when the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true. *DirectTV, Inc. v. Treesh*, 487 F3d 471, 476 (6th Cir. 2007). To survive a motion to dismiss, the complaint must

offer sufficient factual allegations that make the asserted claims plausible on their face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Legal conclusions couched as factual allegations will not suffice. *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

### I. Whether Perry's Claims are Time-Barred

For the most part, the parties' arguments here are identical to those considered and ruled upon by the Court following the defendants' motions for judgment on the pleadings in *Gordon*. *See* Docket No. 18-10148, Doc. # 27. The cases diverge, however, with respect to Plaintiff Amanda Perry, as the complaint here alleges certain facts unique to her. Specifically, it alleges that in August 2013, Defendants sued Perry to collect on credit card debt for an account it said she opened in December 2007. The twist? Perry alleges that she could not have done so because she was only 16-years-old at the time. So, Perry contends, Defendants violated the FDCPA by filing the debt-collection suit against her along with a false affidavit of claim that swore that she contracted for a debt she did not sign for.

But Perry's FDCPA claims face a significant–indeed, insurmountable–obstacle: They are time-barred. Perry's claims all stem from the allegedly false debt-collection lawsuit filed against her in 2013. But an FDCPA claim must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k. Perry's lawsuit was not. Filed in January 2018, it comes well-after the one-year limitations period expired, whether that period is measured from the date

the lawsuit was filed (8/14/13) or from the date the summons issued (9/16/13). *See Ruth v. Unifund CCR Partners*, 604 F.3d 908, 914 (6th Cir. 2010) (declining to address whether the FDCPA's one-year clock begins when a suit is filed or when the plaintiff was served).

In response, Perry points to a garnishment issued on Defendants' behalf in November 2017 as evidence that the FDCPA violations remain ongoing. Her suit, she argues, was timely filed within one year of the garnishment. This argument invokes the continuing-violation doctrine; a doctrine that applies when a plaintiff challenges "an unlawful practice that continues into the limitations period" and is an exception to the general rule that a "limitations clock begins to run at the time of the act that gives rise to the claim." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257 (6th Cir. 2014). But the Sixth Circuit has held that this doctrine does not apply in the FDCPA context; an FDCPA claim accrues upon the initiation of a deceptive, abusive, or otherwise unfair lawsuit because it is a "discrete, immediately actionable event." *Id*. at 258. This case is no different–Perry's claim accrued when the lawsuit against her was initiated. Thus, her claims, filed several years after that date, are time-barred and must be dismissed.

## II. FDCPA Claims

This brings the Court to the remaining Plaintiffs' claims, which Defendants have not argued are time-barred. As in *Gordon*, the parties' arguments revolve around a central dispute: Whether the complaint alleges that Defendants failed to provide sufficient proof to accompany their lawsuits (as Defendants contend) or whether it alleges that Defendants lacked sufficient proof to support their debt-collection claims altogether (as Plaintiffs contend). *Compare Harvey v. Great Seneca Fin. Corp.* 453 F.3d 324, 333 (6th Cir. 2006) ("[A] debt may be properly

9

pursued in court, even if the debt collector does not yet possess adequate proof of its claim.") *with* 15 U.S.C. § 1692e (prohibiting the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt."); § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). And like *Gordon*, Plaintiffs' complaint here alleges both that Defendants failed to accompany their lawsuits with sufficient proof and that they lacked it altogether.

As to the former, the complaint is replete with allegations addressing the amount of proof, or rather the lack thereof, that Defendants provided when they filed their debt-collection suits against Plaintiffs. *See, e.g.,* Amended Complaint, ¶ 47 ("The lawsuits filed by the Defendants are all the same, have the same or similar paperwork attached and all lack any proof that CAVALRY owns the specific debt being sued upon."); *id*. at ¶ 39 (alleging Defendants failed to attach full and complete purchase/sale agreements to the lawsuits); *id*. at ¶ 48 (alleging Defendants failed to attach credit card agreements to the lawsuits). But these allegations, which nearly identical to those made in *Gordon*, cannot support an FDCPA claim since they are nothing more than a challenge to the sufficiency of the proof accompanying Defendants' suits against Plaintiffs. *See Harvey*, 453 F.3d at 333.

Yet this is not all that Plaintiffs allege. They also allege a garden variety of different falsities or misrepresentations in the filing of the debt-collection suits. But their various generalized allegations of falsehoods are not supported by well-pleaded facts to show the same. The complaint relies on conclusory statements and legal conclusions masquerading as factual allegations, but lacks any *factual content* that would allow the Court to reasonably infer liability. *See Iqbal*, 556 U.S. at 678. For example, it produces a parade of falsities, alleging that

10

Defendants: file "false collection lawsuits for false amounts," Amended Complaint ¶ 2; seek "false debt amounts," *id*. at ¶ 50; make "false allegations," *id*. at ¶¶ 42, 54; take "actions to falsify debt verifications," *id.* at ¶ 58; and design and furnish "false and hearsay proof and false evidence of a debt ownership." *Id*. at ¶ 72d. But despite all these claims of mendacity in the debt-collection suits, there are no well-pleaded *factual allegations* that could allow the Court to infer the same.

Indeed, consider the variety of factual allegations that, if pled, could support Plaintiffs' claims, including: That they did not have accounts with the particular lender; that the accounts at issue were fraudulently opened; that they did not incur a debt to the lender; that their debt was not included in the debts Cavalry purchased in bulk; that the debt-amounts listed were inaccurate; that Cavalry sought unauthorized interest, fees, or charges; that Cavalry sued the wrong persons; or that Cavalry's suit fell outside the applicable statute of limitations. Although any one of these factual allegations could state a claim under the FDCPA, Plaintiffs did not include them and have not explained their absence. The complaint's vague, generalized allegations of falsehoods are no replacement for well-pleaded factual allegations. With this in mind, the Court turns to Plaintiffs' specific claims.[1]

### a. False, Deceptive, and Misleading Representations

First, Plaintiffs generally allege that Defendants violated § 1692e (using false, deceptive, or misleading representations or means in connection with the collection of any debt) and § 1692e(10) ("use of any false representation or deceptive means to collect or attempt to collect

---

[1] Because Plaintiffs' claims mirror those raised in *Gordon*, the Court's analysis of these claims mirrors its analysis of the claims in *Gordon*.

any debt"). "Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions." *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

Plaintiffs have not plausibly alleged that the least sophisticated consumer would have been misled by Defendants' filing of the debt-collection suits. The state-court complaints alleged that Plaintiffs owed a debt on a specific account and stated the amount owed, allegations that even the least sophisticated consumer would understand. What's more, at least some of the complaints went beyond the bare minimum by including supporting documentation about the underlying debts. The least sophisticated consumer standard assumes that these complaints and supporting exhibits were read in their "entirety, carefully, and with some elementary level of understanding." *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 510 (6th Cir. 2007). And read as a whole, these documents did not mislead. *See Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 595 (6th Cir. 2009) (holding a complaint did not mislead when read as a whole). Indeed, Plaintiffs have not denied that they owed a debt or that Cavalry misstated or misrepresented the amount owed. *See id*.; *Harvey*, 453 F.3d at 332 ("Harvey never denied in her complaint that she owed Seneca a debt, nor did she claim that Seneca and Javitch misstated or misrepresented the amount that she owed."). And any conclusory, non-factual allegations as to various misleading falsehoods in the debt-collection suits do not state a claim.

### b. Absence of Legally Recognized and Non-Hearsay Documentation

Next, Plaintiffs allege that Defendants violated § 1692f(1) by designing and furnishing the debt-collection suits while knowing that the format they used would mislead Plaintiffs into believing that the suits were supported by legally recognized and non-hearsay documentation,

even though that was not the case. Section 1692f(1), however, only prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." And Plaintiffs never allege that the amounts sought in the debt-collection suits were not authorized by the underlying credit agreements or that Cavalry sought interest, fees, charges, or expenses not authorized by those contracts. Nor do Plaintiffs cite any law prohibiting recovery of the amounts sought. Their conclusory allegation that the debt-collection suits were not supported by legally recognized proof is no substitute.

### c. Seeking to Collect on Debts with No Proof

Plaintiffs' third claim contends that Defendants sought to collect on the debts "with no proof, chain of title or transfer, authorization or card holder agreement to collect any amount, interest, fee or any charges," in violation of § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). On its face, this appears to be a claim that the debt-collection suits were not accompanied by any proof, which, again, is not actionable. *Harvey*, 453 F.3d at 333. But, even if this claim is read more charitably, construed as a contention that no proof exists, it still fails. Not only have Plaintiffs not pleaded any facts specific to their § 1692f claim, *see Christy v. EOS CCA*, 905 F.Supp.2d 648, 656 (E.D. Penn. 2012) ("A complaint will be deemed deficient under [§ 1692f] if it does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA."), but their argument that no proof exists is met with a familiar reply: It is unsupported by any well-pleaded factual allegations. Thus, this claim fails.

### d. Threatening to Sue Plaintiffs Without the Necessary Proof

13

Next, Plaintiffs reiterate their allegation that Defendants designed and furnished "false and hearsay proof and false evidence of debt ownership." This time, however, they allege that Defendants violated § 1692e(5), which prohibits the "threat to take any action that cannot legally be taken or that is not intended to be taken."

Lawsuits and court filings can be a threat under the FDCPA. *See Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 535 (6th Cir. 2014). But for a lawsuit to violate the FDCPA, it must be *unlawful*. *See id*. (holding that allegations that the defendant filed and maintained an *invalid* lien for a month stated a claim under § 1692e(5)); *see also Heintz v. Jenkins*, 514 U.S. 291, 296 (1995) ("[W]e do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an 'action that cannot legally be taken.'"). And Plaintiffs have not alleged any well-pleaded facts to show how the suits here were unlawful. Instead, they repeatedly emphasize that Defendants filed them with the sole intent to obtain default judgments. But this contention is merely speculative and, even if true, would not run afoul of § 1692e(5). *See St. John v. Cach, LLC*, 822 F.3d 388, 391 (7th Cir. 2016) (holding § 1692e(5) "does not prohibit debt collectors from filing a collection lawsuit without intending to go to trial."). So, this claim fails.

### e. Falsely Representing that the Suits were Supported by Assignments

Plaintiffs' final claim alleges that Defendants falsely represented that the state-court suits were supported by valid assignments of the debts sued-upon from Citibank to Cavalry, in violation of § 1692e(2)(A) (prohibiting the false representation of "the character, amount, or legal status of any debt"). Under Michigan law, "rights can be assigned unless the assignment is clearly restricted." *Burkhardt v. Bailey*, 680 N.W.2d 453, 462 (Mich. Ct. App. 2004). A valid

14

assignment requires a written instrument that clearly reflects the assignor's intent to vest in the assignee a present right to thing assigned. *Id*. at 463 ("[U]nder Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer 'the thing' to the assignee."). The assignee then "stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Id*. at 462.

As to this claim, all Plaintiffs' offer is an unsupported legal conclusion that no assignment occurred. But a well-pleaded complaint must rest on factual allegations, not legal conclusions. *See Rondigo*, 641 F.3d at 670. What's more, the documents attached to Plaintiffs' complaint rebut their argument that no assignment occurred. At least three of the debt-collection complaints were accompanied by a Bill of Sale and Assignment, signed by a Citibank official, stating, "the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 and the final electronic file." This written language clearly and unambiguously manifests Citibank's intent to transfer the relevant accounts. *Burkhardt*, 680 N.W.2d at 464 ("[T]he law presumes that the parties understand the import of a written contract and had the intention manifested by its terms."). That is all that required to show a valid assignment. *See id*. ("[W]hen the language of a document is clear and unambiguous, interpretation is limited to the actual words used.").

None of Plaintiffs' legal arguments couched as allegations rebut this conclusion. First, Plaintiffs insinuate that the assignment did not comply with Michigan's statute of frauds because no representative from Cavalry signed it. Amended Complaint, ¶ 56. This is incorrect. Michigan's statute of frauds only requires the assignment to be signed "by the party to be

15

charged" with the agreement or promise.  *See Burkhardt*, 680 N.W.2d at 463, quoting M.C.L. § 566.132(1)(f).  Here, that party was the lender assigning the debts (such as Citibank), so no signature from Cavalry was required.

Second, Plaintiffs contend that the Bill of Sale and Assignment contained "no evidence showing the specific assignment of the specific debt(s) from the Original Creditor to Cavalry SPV."  Amended Complaint, ¶ 57.  But this is nothing more than an allegation that Cavalry filed the debt-collection lawsuit with insufficient proof of the assignment, which cannot support an actionable FDCPA claim.  *Harvey*, 453 F.3d at 333.

To be sure, Plaintiffs are correct that the exhibits attached to the state-court complaints painted an incomplete picture.  Although they show a valid assignment of certain accounts by Citibank to Cavalry, and show the existence of a debt owed to Citibank by Plaintiffs, the exhibits do not show that those specific debts were included in the accounts sold and assigned by Citibank to Cavalry.  And the Court does not have any documentation showing that similar exhibits were actually attached to the complaint against Pearsall.  But Cavalry was not required to attach this information to its state-court complaints, *id*., and Plaintiffs have not alleged that their specific debts were *not included* in the debt-portfolio Cavalry purchased or, for that matter, *any facts* tending to show that no valid assignment occurred.  Instead, all they offer is the bare legal conclusion that the assignment was invalid, which is not enough to state a claim.

### III. State Law Claims

This leaves only Plaintiffs' MRCPA claims, which they concede are based on the same set of facts as their FDCPA claims.  The Court shall grant Defendants' request to dismiss most of these claims with prejudice, as MRCPA claims that "simply duplicate" the FDCPA claims "need

not be addressed separately." *Newman v. Trott & Trott, P.C.*, 889 F.Supp.2d 948, 967 (E.D. Mich. 2012); *see also In re Repository Techs., Inc.*, 601 F.3d 710, 725 (7th Cir. 2010) ("[W]hen a state-law claim is clearly without merit, it invades no state interest–on the contrary, it spares overburdened state courts additional work that they do not want or need–for the federal court to dismiss the claim on the merits rather than invite a further, and futile, round of litigation in the state courts.").

But the Court will not do the same for any MRCPA claims by Amanda Perry. This is because her FDCPA claims do not fail here on their merits; instead, they are barred by the applicable statute of limitations. Yet this may not be the case for her state-law claims; indeed, Defendants do not argue that those claims are barred by any Michigan statute of limitations. And the specific facts that she alleges–that Defendants attempted to collect on a debt that she did not sign for–may well constitute violations of the MRCPA. So, having dismissed the federal claims, the Court shall decline to exercise supplemental jurisdiction over Perry's state-law claims and will dismiss those claims without prejudice.

## CONCLUSION

For the reasons above, the Court ORDERS that Defendants' Motion for Judgment on the Pleadings is GRANTED.

IT IS SO ORDERED.

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated: August 16, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 16, 2018, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager